Relyea v. The Kansas City, Ft. S. & G. Ry. Co.

## Relyea, *Appellant*, v. The Kansas City, Fort Scott & Gulf Railroad Company.

### In Banc, November 14, 1892.

1. **Negligence:** FELLOW-SERVANTS. They are fellow-servants who are so related and associated in their work that they can observe and influence each other's conduct and report delinquencies to a common correcting power. (*Sullivan v. Railroad*, 97 Mo. 113; *Dixon v. Railroad*, 109 Mo. 413; *Parker v. Railroad*, 109 Mo. 362.)

2. ———: ———: DIFFERENT DEPARTMENTS OF WORK. They are not fellow-servants who are engaged in different and distinct departments of work.

3. ———: ———: RAILROAD. A brakeman of one freight railway train is the fellow-servant of the fireman of another freight train where they are engaged in the same department of service and are operating the trains over the same section of the road.

4. **Railroad:** NEGLIGENCE: FREIGHT TRAIN: CONDUCTOR. In an action for the death of plaintiff's husband caused by the company's negligence, the evidence showed that at one of the company's stations the conductor of one of its freight trains directed the rear brakeman to set out four front cars on the switch; that the latter before doing so set no brakes on the rear cars as it was his duty to do, so that when the front cars and locomotive were uncoupled the rear cars ran backwards down a long grade, and struck a freight train coming from the opposite direction, killing plaintiff's husband who was fireman on the latter train. *Held*, that the conductor of the first train was not guilty of negligence in failing to see that the brakes were set on the rear cars.

5. ———: ———: ———: BRAKEMAN. Nor was the company guilty of negligence in not having more than two brakemen on the forward train since it was a through freight train, although use could have been made of another brakeman at the station in question.

6. ———: ———: ———. Nor was the company guilty of negligence in running the rear train ahead of time without notice to the conductor of the forward train, when it did not appear that it was to run on the time of the forward train, and it was usual to run such train ahead of time.

7. ———: ———: ———: BRAKEMAN. The cause of the accident was the negligence of the brakeman of the forward train in failing to secure the rear cars at the station and not the running of the train ahead of time.

*Appeal from Jackson Circuit Court.*—HON. J. H. SLOVER, Judge.

AFFIRMED.

*Crittenden, Stiles & Gilkeson* and *G. L. Jones* for appellant.

(1) The court erred in sustaining defendant's demurrer to the evidence on the ground that plaintiff had failed to show that she had been legally divorced from her former husband, and, hence, failed to show that she was the lawful widow of Johnson Relyea and as such entitled to maintain the suit. And in excluding the evidence offered to show that she had applied for and obtained a decree of divorce. Her marriage to Relyea being shown, the presumption of her eligibility at once arose, either by death of or divorce from her husband, and the *onus* was on the defendant to prove the contrary. 1 Greenleaf's Evidence, secs. 35, 42; Best on Presumptions, secs. 49–136; 2 Wharton on Evidence, sec. 1297; Stewart on Marriage & Divorce, sec. 457; *Blanchard v. Lambert*, 43 Iowa, 228; *Hull v. Rawls*, 27 Miss. 471; *Klein v. Lauderman*, 29 Mo. 259; *Waddingham v. Waddingham*, 21 Mo. App. 609. (2) The court erred in holding that the conductor in charge of said section of train number 54 was a fellow-servant with the fireman of train number 52, in such sense as to relieve the company from the negligence of said conductor in causing his train to be cut on a grade, and insecurely, and without anyone in charge, so leaving it, that it would naturally, and did, run down the grade and collide with the train on which was plaintiff's husband. *Railroad v. Ross*, 112 U. S. 337; *Au, Adm'x, v. Railroad*, 29 Fed. Rep. 72; *Garrity v. Railroad*, 25 Fed. Rep. 258; *Moon's Adm'r v. Railroad*, 78 Va. 745; s. c., 49 Am. Rep. 401; *Railroad v. Ackley*, 8 S. W. Rep. 691; *Railroad v. Cavin's Adm'r*, 9 Bush, 559;

*Railroad v. Brooks*, 83 Ky. 129; *Moore v. Railroad*, 85 Mo. 588; *Dick v. Railroad*, 38 Ohio St. 389; *Lewis v. Railroad*, 59 Mo. 495; *Calvin v. Railroad*, 23 S. C. 526; *Hall v. Railroad*, 74 Mo. 298. (3) But independent of this question of fellow-servant there were two other distinct grounds for recovery stated in the petition, in respect to which abundant evidence was introduced, and upon which plaintiff was entitled to go to the jury. The first of which was that the division superintendent or officers of the company having charge of the trains was negligent in directing train number 52, on which plaintiff's husband was, to be run ahead of the schedule time without notifying the conductor of train number 54 of the same, and that train number 52 was so dangerously near. (4) Regardless of every other consideration the plaintiff was entitled to have her case go to the jury on the issue that the train, second section of train number 54, was insufficiently manned to do the work of cutting the train, sidetracking four of the cars, of securely staying and guarding the portion so cut, while the other portion was being sidetracked. *Flike v. Railroad*, 53 N. Y. 549; *Booth v. Railroad*, 73 N. Y. 38; *Snow v. Railroad*, 8 Allen, 441; *Jones v. Cotton Mills*, 82 Va. 140; *Railroad v. Barber*, 5 Ohio St. 541; *Johnson v. Ashland Co.*, 37 N. W. Rep. 823. The case should have been submitted to the jury under proper instructions, and it was clearly erroneous for the court to refuse to do so, and to afterwards overrule the motion to set aside the nonsuit and order judgment against plaintiff.

*Wallace Pratt, Frank Hagerman* and *I. P. Dana* for respondent.

(1) The undisputed testimony shows that the collision was caused by the negligence of a brakeman

on the first train.    The latter was a fellow-servant with the deceased, who was fireman on the second train, and, therefore, respondent, the common master, was not liable for the latter's death resulting from the collision, and the court properly sustained the demurrer to the evidence.    1 Shearman & Redfield on Negligence [4 Ed.] sec. 224; *Moore v. Railroad,* 85 Mo. 594; *McMaster v. Railroad,* 4 S. Rep. 59; *Randall v. Railroad,* 109 U. S. 479; *Howard v. Railroad,* 24 Am. & Eng. R. R. Cases, 448; *Hewitt v. Railroad,* 31 Am. & Eng. R. R. Cases; *Hayes v. Railroad,* 3 Cush. 270; *Harvey v. Railroad,* 10 N. Y. Sup. 645.    (2)    Even if respondent is wrong in the foregoing statement of the cause of the collision, the trial court did not err in refusing to submit the case to the jury on any of the three charges of negligence, which alone of the seven contained in plaintiff's petition are urged upon this court by appellant as having any evidence to sustain them.    *First.*    There was no testimony showing that running the second train ahead of time was a negligent thing to do, or connecting that fact in any way with the cause of the collision. *McDermott v. Railroad,* 87 Mo. 285; *Bowen v. Railroad,* 95 Mo. 268; *Stepp v. Railroad,* 85 Mo. 229; *Harlan v. Railroad,* 65 Mo. 22; *Brown v. Railroad,* 20 Mo. App. 222.    But, if the reverse was true, there is no testimony showing who was responsible for the negligence, and, in the absence of testimony on that point, it will be presumed to have been a fellow-servant with deceased.    *McGowan v. Railroad,* 61 Mo. 528; *Travers v. Railroad,* 63 Mo. 421; *Blessing v. Railroad,* 77 Mo. 410; *Murray v. Railroad,* 98 Mo. 577; *Ross v. Railroad,* 58 N. Y. 217.    *Second.*    There was no testimony showing that the first train was not provided with a force of men sufficient to properly operate it.    Even if there was negligence in that respect, deceased knew

it and waived his right to complain thereof by remaining in defendant's service. *Skipp v. Railroad*, 5 Exch. 223; *Railroad v. Barber*, 5 Ohio St. 541. And the testimony shows something else to have been the proximate cause of the collision, and that must determine the question of liability in this case. *Hayes v. Railroad*, 3 Cush. 270; *Stepp v. Railroad*, 85 Mo. 229; *Brown v. Railroad*, 20 Mo. App. 222. *Third.* There is no testimony showing that the negligence of the conductor of the first train caused the collision, or that he was negligent in any way. But, even if he was negligent, plaintiff cannot recover, for he was a fellow-servant with her husband, a fireman on another train. *Easton v. Railroad*, 32 Fed. Rep. 895; *Railroad v. Adams*, 5 N. E. Rep. 187; *McAndrews v. Burns*, 39 N. J. L. 117; *McMaster v. Railroad*, 4 S. Rep. 59; *Howard v. Railroad*, 24 Am. & Eng. R. R. Cases, 448. (3) The testimony of plaintiff showed that she married Relyea at a time when she had a living husband, who was also living at the time of the trial. There is no presumption that she was divorced from the former husband, and, not being the lawful wife of Relyea, she could not recover. Revised Statutes, 1889, sec. 6842; *Williams v. Williams*, 63 Wis. 58; *Ellis v. Ellis*, 58 Iowa, 720; *May v. State*, 4 Tex. App. 424; *Hull v. State*, 7 Tex. App. 593; *Gorman v. State*, 23 Tex. 646; Wharton on Evidence [3 Ed.] sec. 1297; *Smith v. Smith*, 5 Ohio St. 32; *Wiseman v. Wiseman*, 89 Ind. 479; *Streeter v. Streeter*, 43 Ill. 155.

BLACK, J.—The plaintiff brought this suit as the widow of Johnson Relyea to recover damages because of the death of her husband, who received injuries while in the employ of the defendant, and from which injuries he died.

The trial court sustained a demurrer to the plaintiff's evidence, and she took a nonsuit with leave, etc.

In support of this ruling, it is insisted that plaintiff's husband received the injuries which caused his death by reason of the negligence of a fellow-servant, and for this reason the defendant is not liable.

The evidence produced by the plaintiff discloses the following facts: At the time of the accident, that part of the plaintiff's road extending from Thayer in a northwest direction for a distance of one hundred and thirty-eight miles to Springfield constituted a division. Two through freight trains, known as section 1 and section 2 of number 54, left Thayer for Springfield at two or three o'clock in the morning. Each of these trains had a conductor and two brakemen besides an engineer and fireman. They were followed by local freight train number 52, which had in charge of it a conductor, three brakemen, an engineer and a fireman. The plaintiff's husband was fireman on the engine of this train 52, which was the last of the three to leave Thayer. The distance from Thayer to a station called Burnham is forty-one miles, and it is four miles from there to the next station, called Willow Springs. From Burnham to the latter station there is a down grade for about half the way, and then an up grade to the switch at Willow Springs. Section 2 of train number 54 was in the rear of section 1, and had fourteen or fifteen cars when it reached Burnham. It took on four more cars at that place. When it reached Willow Springs the conductor concluded to drop four cars on the switch, because the train was too heavy to haul over the up grade from there to Sterling, the next station; and to that end the engine and four forward cars were uncoupled, leaving the fourteen cars standing on the main track. These fourteen cars ran back of

their own momentum towards Burnham, and collided with train 52, which had in the meantime left that station for Willow Springs. It was in this collision that plaintiff's husband received the injuries of which he died.

Frank Shea was the conductor, Austin the head and Short the hind brakeman on section 2 of train 54. The plaintiff called Shea and Austin as witnesses, and they are the only witnesses who have any knowledge of what occurred at Willow Springs. Shea, the conductor, says when he reached Willow Springs with his train he directed Short, the rear brakeman, to cut out four cars; that Short went to assist the engineer in setting them in on the sidetrack, and that it was Short's duty to see that the hind end of the train was secured with the brakes.

From Austin's testimony it appears section 1 of train 54 was at Willow Springs when section 2 arrived. He and his conductor Shea had a conversation at that place on the station platform, in which Shea told him to go on to Sterling, the next station, with section 1, and there notify train number 3, coming from the other direction. This order was given to avoid a collision between number 3 and section 2. Austin got on the caboose of section 1, and that train started up and then stopped. It seems the engineer of section 1 refused to take the chances of reaching the next station in time to pass number 3. Austin then went back to the head of his train and met Shea and Short, when Shea said, "Go after the hind end; they have run back." He and Short with the engineer and the four cars went back after the escaping fourteen cars. These cars ran back because the brakes were not set. It was still very dark when all these things took place at Willow Springs.

From the foregoing statement of the facts it is

manifest that Short, the hind brakeman on section 2 of train 54, was guilty of negligence in not setting the brakes on some of the fourteen cars before he cut out the four cars. The question then arises whether the brakeman on one of these trains and the fireman on the other were fellow-servants within the rule which exempts the master from liability when one servant is injured by the negligence of his coservant. Much has been said on this subject of late in the following cases: *Sullivan v. Railroad*, 97 Mo. 113; *Dixon v. Railroad*, 109 Mo. 413; *Parker v. Railroad*, 109 Mo. 362; *Schlereth v. Railroad*, 19 S. W. Rep. 1134.

These cases reject the rule of exemption as it is often broadly stated, though less frequently applied, that all are coservants who are engaged by the same master in carrying on some general enterprise, no matter how different and disconnected the work may be. They assert the more reasonable and just rule, that they are coservants who are so related and associated in their work that they can observe and have an influence over each other's conduct and report delinquencies to a common correcting power; and they are not coservants who are engaged in different and distinct departments of work. They show that track walkers and track repairers and persons operating a stone crusher are not fellow-servants with those engaged in operating trains.

Now in this case each servant was under the immediate command of his own conductor, it is true; but that fact does not constitute a decisive or controlling circumstance. Many cases may be instanced where different gangs of men, each gang under the orders of its own foreman, are clearly coservants within the rule of exemption. It does appear in this case that train 52 left Thayer and pursued its trip under the orders of the train dispatcher; and it is fair to presume that the

other trains made their trips under orders emanating from the same source. The injured and offending servants were operating trains over the same section of the road. Though sometimes far apart, they were necessarily thrown into close relation in respect to the performance of their work, and they were engaged in the same department of service. They were, in our opinion, coservants within the fair meaning of the rule of exemption, so that defendant is not liable for injuries inflicted by one upon the other.

This case is on its unquestioned facts unlike those above mentioned. It is more like *Schaub v. Railroad*, 106 Mo. 74. In that case a brakeman was injured by cars standing on a sidetrack. Says the court: "There was no evidence of any negligence in the case of anyone, except the trainmen who put the cars on the switch, and for that negligence the company was not liable to the deceased." That case was, in its facts, different from those before mentioned where the relation of fellow-servant was held not to exist, and in the opinion of the writer it is not in conflict with them in the conclusion reached on this subject.

2. But it is insisted on the part of the plaintiff that the liability of the defendant may be made to stand on the ground that the conductor of the forward train was an agent and representative of the defendant; that he was guilty of negligence leading to the injury, and that the defendant is liable for his negligence, he being an agent and vice-principal of the company. This presents, of course, a different question from that which we have been considering.

The first inquiry is, was there evidence tending to show negligence on his part? If not, that disposes of this whole contention. If Conductor Shea was negligent, it was because he knew, or in the discharge of his duties ought to have known, that the fourteen cars had

not been secured. He was called to the stand by the plaintiff, but not questioned as to the details of the transaction. The only inference that can be drawn from his testimony and the evidence of Austin, the head brakeman, is that Shea was standing on the station platform, and there told Short, the hind brakeman, to cut out the four cars and place them on the sidetrack. Short undertook to obey this order, but in doing so failed and neglected to set the brakes on the cars left on the main track. There is no evidence in the case tending to show that Shea knew that Short had not secured those cars by setting some of the brakes. The only inference which can be drawn from the evidence is, that he was not with Short when the forward cars were cut out.

We then come to the further inquiry whether it was his duty to know whether the other cars had been secured. The proof shows, and there is no evidence to the contrary, that it was Short's duty, as hind brakeman, to look out for his end of the train. It was necessary and proper for the conductor to go to the station, and to give orders as to the movement of the train, but it is out of all reason to say that he was in duty bound to follow up each brakeman and see how each movement was executed. There is in our opinion no evidence to show, or tending to show, that the conductor was guilty of any negligence whatever.

3. It is again insisted that the defendant was negligent in that the rear train was run ahead of schedule time by orders from superior officers, without giving the conductor of the forward train notice thereof. The evidence shows that number 52, the rear train, reached Burnham forty-eight to fifty-five minutes ahead of its schedule time, and that it made the gain in time pursuant to orders from superior officers, without notice to the conductor of the forward train. But it also appears

that it was no uncommon thing for these trains to run ahead of their schedule time when ordered so to do, and that it was not usual or necessary to notify the conductor of the forward train of that fact. Specials were to be expected at all times. There is no evidence that number 52 was ordered to run on the time of the forward trains. We do not see any evidence of negligence in this respect. Besides all this the fact that this train was running in advance of its regular time was not the cause of the accident. The direct and only cause was the negligent act of the brakeman in failing to secure the cars at Willow Springs.

4. The further point is made that defendant was negligent in this, that it did not man the forward train with a sufficient number of brakemen. These trains were operated at a slow rate of speed, not exceeding fifteen miles per hour. Three brakemen were allotted to the local freight trains, because it was necessary to handle cars at the way stations. Two were allotted to the through freight trains; and the proof is that they were sufficient to handle such trains composed of fifteen or eighteen cars. Use could have been made of another brakeman at this particular time, but the fact remains that two brakemen and a conductor constituted the usual and sufficient crew for all ordinary occasions. There is no proof in the case to justify a conclusion that this train was not manned with a sufficient number of brakemen.

It is sufficient to say in conclusion that, from the evidence produced by the plaintiff, this accident occurred solely by reason of the negligence of the brakeman. The court, therefore, did not err in sustaining the demurrer to the evidence, and the judgment is affirmed. BRACE and THOMAS, JJ., dissent. The other judges concur, BARCLAY, J., expressing his views in note below by him written.

Relyea v. The Kansas City, Ft. S. & G. Ry. Co.

[Barclay, J., concurs except that he does not wish to be understood as approving the judgment in the *Schaub case.*]

Thomas, J. *(dissenting).*—I find myself unable to concur in the foregoing opinion.

The party killed and the negligent brakeman were not, in my judgment, fellow-servants within the rule that exempts the master from liability for the negligence of a coservant.

I think the principle announced in *Sullivan v. Railroad,* 97 Mo. 113; *Dixon v. Railroad,* 109 Mo. 413; and *Parker v. Railroad,* 109 Mo. 362, should be applied to and control the decision in this case. The rule, I concede, was not in those cases, formulated in the same language by the four concurring judges, but the principle upon which the rule was made to rest was announced by all substantially alike.

Judge Barclay in the *Dixon case,* in holding a railroad company liable for the death of a workman engaged in its quarry, caused by the negligence of one of its engineers, said: "The master had seen fit to place the deceased quarryman and the trainmen *under supervision and management totally apart from each other. They were not acting under the same immediate direction. Railroad v. Mackey* (1887), 127 U. S. 208. Each looked to a different individual, as the master's representative for directions in his work, and had no practical connection with the superior who guided and supervised the acts and conduct of the other."

Judge Black in the *Parker case,* in holding the company liable for the death of a trackman caused by the negligence of the engineer, stated the rule with great terseness and precision thus: "Guided by the real reason for the rule, it seems to us it should be applied, and applied only, in those cases where the

servant injured and the one inflicting the injuries *are so associated and related in their work, that they can observe and have an influence over each other's conduct, and can report delinquencies to a common correcting power or head*. In short, they should be fellow-servants in fact, and not, simply, in dialectic theory. If in separate and distinct departments, *so that the circumstances just stated do not and cannot exist*, then they are not fellow-servants within any just or fair meaning of the rule." (The italics in these extracts are mine). And in the opinion in this case the rule is again stated in substantially the same language.

The rule as stated by myself in the *Parker case*, and in which Judge BRACE concurred, is this: "The trainmen and section men were not fellow-servants; not because they performed *different* work, but because they performed distinct parts of the same work, in different groups, under different foremen. They looked to different individuals for directions in their work. They had no *common*, immediate superior to whom they could look or appeal, if need be, for protection. They had no control of each other. They were not consociated in the performance of their duties."

In these extracts, we find a difference in the statement, but not in the principle and grounds of the rule. A distinction is attempted to be made between laborers in different departments of service, but I think the distinction is wholly an artificial one, and cannot be upheld without abandoning *all the grounds* on which the rule is made to rest. If those are not fellow-servants, who are not "so associated and related in their work that they can observe and have an influence over each other's conduct, and can report delinquencies to a common correcting power or head," or who do not act "under the same immediate control," why should the liability or non-liability depend *on the nature of the*

*work done?*   Why hold a railroad company liable when a section man is injured by the negligence of an engineer, or when a trackman, who tamps rock under the rails and ties, is injured by the negligence of an engineer who is engaged in hauling the rock thus being tamped, on the ground that these employes are not so associated and related in their work, under a common, immediate superior, as to observe and have an influence over each other's conduct, and let the company escape liability where the fireman on one train is injured by the negligence of a brakeman on another, when *they* are not so associated and related in their work, under a common, immediate superior, as to observe and have an influence over each other's conduct?   I must confess I am unable to see or appreciate the distinction.   This distinction cannot be based on the ground of public policy, general convenience or expediency, for that would apply to all, without regard to the departments of the service, or rank among the employes, and, besides that, I think this court has repudiated that ground, as a support for the rule of exemption.   The distinction cannot be made to rest on an implied contract of the assumption of risks, for that, like the other, would apply to all employes without regard to rank, and without regard to the departments of service.

I prefer to rest the rule on the grounds, fairly deducible in my opinion from the cases above named, *i. e.*, upon such association of employes in the master's work, under a common, immediate superior to whom they can look for protection, as that they can observe the conduct of each other, and mutually encourage and influence each other in the careful and faithful performance of that work.

Thus far I feel justified in going, from a consideration of the decisions and grounds of decisions in the *Sullivan, Dixon* and *Parker cases,* alone; but my posi-

tion finds support elsewhere; for to such limitation of the rule of exemption on the ground of fellow-service as herein stated, the judicial mind seems to be trending as illustrated in the following cases: *Railroad v. Ackley*, 8 S. W. Rep. (Ky.) 691; *Cooper v. Mullins*, 76 Am. Dec. (Ga.) 638; *Hobson v. Railroad*, 11 Pac. Rep. (Arizona) 545; *Madden's Adm'r v. Railroad*, 28 W. Va. 610, and *Howard v. Railroad*, 40 Fed. Rep. (U. S. Circuit Court of Vermont), 195.

Let us apply the rule, thus announced, to the facts of the case in hand. *First.* Relyea and the rear brakeman on the forward train were not consociated in their work, so that they could observe each other's acts and have an influence over each other's conduct. They were miles apart. *Second.* They did not work under a common, immediate superior. They were under the directions and control of independent conductors, not, it is true, independent of *their* common superior, but simply independent of each other. And, conceding the propriety of reporting delinquencies, they had no opportunity of reporting the misconduct of each other, nor did they have a common, immediate superior, to whom they could have reported had they so desired, each being under the supervision and control of an independent and separate conductor. Hence, every ground on which the rule, announced by a majority of this court in the *Sullivan, Dixon* and *Parker cases*, is made to rest is here wanting, and yet the defendant company is exempted from liability on the ground, that the rule applies to coservants engaged in the same line or kind of service, *without regard to consociation in their work or common supervision and control.* It seems to be assumed, though not expressly, in the opinion of the court, that liability would have attached in this case, if the death of Relyea had been caused by the negligence of the conductor of the forward train.

Relyea v. The Kansas City, Ft. S. & G. Ry. Co.

I pause to inquire, upon what theory such liability can be predicated? *As to deceased*, the conductor and members of the crew of that train occupied the same relation as to rank precisely, and no other. None of them had any control or authority to direct the movements of the conductor and members of the crew of the rear train. Here were two distinct groups of men, controlled and directed by two conductors wholly independent of each other, not consociated in their work, and widely separated by distance. But these distinct, and as to each other independent, groups were under the control of a common superior, said in the opinion to be the train dispatcher, and if he was the common, immediate superior, not only of the conductors, but also of the other members of the crews, and the firemen and brakemen of these trains were required to look for orders and directions, not to their respective conductors, but to the train dispatcher, then, according to the reasons of the rule, it logically follows that the conductor of the forward train, with the members of his crew, was a fellow-servant of deceased; nay, more, the conductor of the rear train would likewise be his fellow-servant.

That the latter proposition is not the law, I think will be conceded without argument or citation of authority, and the correctness of the former seems in the opinion to be denied, at least by implication, and yet defendant is exempted from liability, apparently, because the injury resulted from the negligence of one servant, holding the same rank in one crew, that the deceased held in the other, both being engaged in the same line or kind of service, *i. e.*, both being engaged in the operation of trains.

But according to the adjudged cases non-liability cannot be predicated upon the rank alone of the offend-

ing and injured servants. It is true the offending servant here was a subaltern; but so were the engineers in the *Sullivan*, *Dixon* and *Parker cases* subalterns; that is, they were inferior in rank in the groups in which they respectively did service; and yet, in those cases, it was not supposed that the master was, therefore, exempted from liability. They had charge of their engines, subject to the order of their conductors, and the hind brakeman, of the forward train in this case, had charge of the fourteen cars, subject to the orders of his conductor. In neither case was the conductor required, or expected, to go and personally see that the engine was properly managed on the one hand, or the brakes properly set on the other. The engineers and brakemen were required to perform their duties without *direct, immediate and constant oversight*. If the master is present, in the persons of his engineers, and their negligent acts are his, why is he not present also in the persons of his brakemen, and why are their negligent acts, in setting brakes, not his? If an engineer under the control of the conductor is the agent of the master, in the management of that part of the train (the engine) of which he has charge, upon what principle can it be said the brakeman in this case, under the control of the conductor, was not the agent of the master in his conduct in relation to that part of the train (the fourteen cars) committed to his charge? Whose act was that brakeman's act in setting the brakes on these fourteen cars? It certainly was not the conductor's, for it is conceded that "it is out of all reason to say that he [the conductor] was in duty bound to follow up each brakeman, and see how each movement was executed;" nor was it the brakeman's act alone, for he did not own the road nor the cars, but was simply acting under orders for the owner. Then whose act was it? Beyond controversy it was the act

of the company.    The company ran the train, and it would be illogical to say that it, through its engineer, opens and closes the throttle of the engine, and opens and closes the valve of the whistle, but it has nothing to do with setting and loosening the brakes, or that the *order* of the conductor to set the brakes is the order of the company, but the *act* of setting them in obedience to *its* order is not its act.

Following, therefore, the rule and the true reason of the rule as heretofore stated by four of the seven judges of this court, I have no hesitancy in saying that the offending and injured servants, in this case, were not fellow-servants and the judgment ought to be reversed and the cause remanded for new trial.

I am authorized to say that BRACE, J., concurs with me in these views.