CHICAGO & ALTON RAILROAD CO.

v.

BRIDGET O'BRYAN, Adm'x, etc.

1. FELLOW SERVANTS.—When servants are engaged in the same line of employment, if there is a rational and necessary connection between the different parts thereof, such as necessarily brings them into frequent contact with each other in the prosecution of their work, they are co-servants.

2. RISK OF EMPLOYMENT—FELLOW SERVANTS.—Where the machine and car shops in the same yard were under the general supervision of one man, but each had a separate foreman, and the foreman of the machine shop, wishing material, ordered the foreman of the car shop to have certain cars, which were in the way, removed, and the latter's gang of men went to work, deceased placing himself directly in front of the bumpers, to help push, and the gang of men of the former were moving other cars, and after pushing down one, another was sent with such force as to push the first against the car in front of which was deceased, by which he was fatally injured. *Held*, that the accident was without fault, and the injury one the risk of which deceased assumed when he accepted the service; that deceased and the persons who caused the injury were fellow servants.

C. & A. R. R. Co. v. O'Bryan.

APPEAL from the Circuit Court of McLean county; the Hon. O. T. REEVES, Judge, presiding. Opinion filed May 22, 1884.

Messrs. WILLIAMS, BURR & CAPEN, for appellant; as to an employe assuming the usual or ordinary risks of employment, cited C. & N. W. Ry. Co. v. Donahue, 75 Ill. 106; I. C. R. R. Co. v. Welch, 52 Ill. 183; I., B. & W. Ry. Co. v. Flanigan, 77 Ill. 365; T., W. & W. Ry. Co. v. Durkin, 76 Ill. 395; Cooley on Torts, pp. 541, 551–2.

Where the injury is caused by the negligence of a fellow servant in the same line of employment, the common master is not liable: T., W. & W. Ry. Co. v. Durkin, 76 Ill. 395; C. & A. R. R. Co v. Keefe, 47 Ill. 108; C. & A. R. R. Co. v. Rush, 84 Ill. 570; Valtez v. O. & M. Ry. Co., 85 Ill. 500; C. & N. W. Ry. Co. v. Moranda, 93 Ill. 302.

As to who are fellow servants: Wood on Master and Servant, §§ 425, 427, 435; Kranz v. White, 8 Bradwell, 583; C. & A. R. R. Co. v. Murphy, 53 Ill. 336; C., C. & I. C. R. R. Co. v. Troesch, 68 Ill. 545; C. & N. W. Ry. Co. v. Scheuring, 4 Bradwell, 533; Morgan v. Ry. Co., L. R. I. Q. B. 149; Wonder v. B. & O. R. R. Co., 32 Md. 411; Slater v. Jewett, 85 N. Y. 61; Farwell v. B. & W. R. R. Co. 4 Metc. 49; Priestly v. Fowler, 3 M. & W. 1; Coon v. S. & U. R. R. Co., 5 N. Y. 492; Boldt v. N. Y. C. R. R. Co, 18 N. Y. 432; Gilshannon v. S. B. R. R. Co., 10 Cush. 228; Wright v. N. Y. C. R. R. Co., 25 N. Y., 562; Hutchinson v. Railway Co., 5 Exch. 343; Wilson v. Merry, 1 L. R. H. L. Sc. App. Cas. 326; Lehigh Valley C. Co. v. Jones, 86 Pa. St. 432; Lovegrove v. L. B. & S. R. Ry. Co., 16 C. B. N. S. 669; Barton's Hill R. R. v. Reid, 3 Macq. H. L. Cas. 266; Sammon v. N. Y. & H. R. R. Co., 62 N. Y. 251; Whaalan v. M. R. & L. E. R. R. Co., 8 Ohio St. 249; Brown v. Maxwell, 6 Hill, 592; Foster v. M. R. R. R. Co., 14 Minn. 360; Slattery v. T. & W. Ry. Co., 23 Ind. 81; Walker v. B. & M. R. R. Co., 128 Mass. 8; Holden v. F. R. R. Co., 129 Mass. 268; Speed v. A. & P. R. R. Co., 71 Mo. 303; N. C. & St. L. Ry. Co. v. Goster (Sup. Ct. Tenn.), XI Am. & Eng. Cas. 180.

Mr. John T. Lillard and Messrs. Fifer & Phillips, for appellee; that the question whether two employes in a given case are fellow servants, is one of fact for the jury, cited T., W. & W. Ry. Co. v. Moore, 77 Ill. 217; C., B. & Q. R. R. Co. v. Gregory, 58 Ill. 284; Ind. & St L. R. R. Co. v. Morgenstern, 106 Ill. 216; Mullen v. Steamship Co., 78 Pa. St. 25.

Higbee, P. J. This was an action on the case brought by appellee to recover damages sustained by the next of kin of James O'Bryan, deceased, resulting from his death, charged to have been caused by the negligence of appellant's servants.

The construction and repair shops of the railroad company at the time of the accident causing his death, were located at Bloomington, and with the grounds used in connection with them, covered nearly fifty acres of land, and employed about nine hundred men, all of whom were under the general supervision and charge of William Wilson, divided into sub-departments, known as car shop, paint shop, blacksmith shop, machine shop, boiler shop, round house, foundry and lumber yard, each of which had one foreman and some of them two, all of whom were appointed by Wilson. There were three time keepers, one in the car shop, one in the blacksmith shop and one in the machine shop, all of whom reported to Wilson at the end of each month. The machine shop was near the south end of the yard, and the car shop toward the north end; between them was a common storeroom under a sub-superintendent, where all materials and supplies needed by any of the shops were kept under cover.

The different shops were connected by tracks. The car shops had a gang of sixteen or eighteen men to carry materials to and from the shops as required, under a foreman named Shields, and the machine shop had a like gang under White as foreman; both foremen were under the control of Wilson. Most of Shields' orders came from the superintendent of the car shop and those of White from the superintendent of the machine shop. The supplies used in these shops were kept in the storehouse, and those needed in the car shop were taken

from the storehouse to it by Shields' men, and those needed at the machine shop by White's men. There were many tracks in the yard over which these gangs of men were in the constant habit of passing and re-passing, their most usual place of meeting being at or near the common storehouse, where the materials used by the shops were loaded and unloaded, as stored or removed therefrom. The track upon which the accident occurred led from the car shop past the storehouse to the machine shop; its general direction being southeast and northwest, with a grade of about fifty feet to the mile.

On the day in question, Wilson wanted a load of car wheels taken from immediately south of the storehouse to the foundry, which was almost directly west from the car house, and ordered Shields to have the car moved down to the place where it was to be unloaded and then unload it. Shields accordingly ordered seven of his men to go and do the work, among whom was O'Bryan. They approached the car from the west. The first man who came up was Cunningham, who took his place upon the east side of the car; then two others came and took their positions to the right of the bumper; then O'Bryan exactly in front of the bumper; then three others behind the car and to the left of the bumper.

Just before this, White had sent some of his men, under one of his workmen named Kinealy—who was a common laborer, receiving the same pay as the rest—to get some wheels, fastened together by their axles, upon this same track, farther south than the car where O'Bryan was. Three empty cars were in the way and had to be moved north before these wheels could be put upon the track. One car had been sent down and a brake slightly set on it by Ready, one of White's men, before O'Bryan and those with him had taken their positions. This car stopped but a few feet, perhaps from three to five feet, from the car O'Bryan's gang was to move. Those with Kinealy then pushed the second car down in like manner and had started for the third car. This second car going down, struck the first car with force sufficient to push it against the car O'Bryan was pushing, so that O'Bryan was

caught between the bumpers and sustained injuries from which he died two days afterward. None of the other workmen with O'Bryan were hurt, and he would not have been hurt had he not been standing between the bumpers.

The trial of the cause resulted in a verdict and judgment against the railroad company from which it appeals to this court, and assigns numerous errors.

There was but little or no conflict in the evidence as to the principal facts of the case. Did they, in any reasonable view that can be taken of them, justify the verdict? Waiving all question as to the degree of negligence, if any, attributable to deceased in voluntarily placing himself directly between the bumpers of the cars where he received his injury, we are of opinion that the case made by the proofs discloses no such omission of duty or wrongful act on the part of appellant's servants as to render it liable for the death of deceased. When White's men went between the cars, where deceased received his injury, they neither saw nor heard Kinealy's men. The approaching car moved so slowly and noiselessly that the men did not hear it even when it struck the car just back of them, and within from three to six feet of the car they were working at.

Kinealy's men were moving the cars in the usual manner of moving them on the tracks in the yard; they saw no one about the cars below, nor had they any reason to suspect there was any person on the track or near it when they started either of the cars. The distance the cars had to go before they would be stopped by striking the car below was probably not exceeding two hundred feet; the grade was slight; the cars moved slowly, giving ample time for any one who saw them to get out of their way; the track was in plain view between them and the cars below, and no danger was apparent or could have been foreseen by a reasonably prudent person. The manner of moving the cars was not dangerous in itself, certainly not more so than if Kinealy's men had been behind the car pushing it to the place where it was wanted.

The act of moving the cars was not necessarily or apparently dangerous to persons using ordinary care; the accident

C. & A. R. R. Co. v. O'Bryan.

must therefore be regarded as without fault, and the injury re-sulting therefrom, as one the risk of which deceased assumed when he accepted the service, and for which the law affords no remedy.    Addison on Torts, Sec. 3; Cooley on Torts, p. 530; T. W. & W. Ry. Co. v. Muthersbaugh, 71 Ill. 572.

It is next contended that the relation of the parties who caused the injury to O'Bryan was that of fellow servants in the service of a common master in the same line of employ ment, and that therefore no action lies for the injury.

The briefs of the parties contain a very full and elaborate review of the authorities upon the subject of who are fellow servants within the meaning of the law in this State, and much stress is placed upon certain expressions used in the opinion of the court in the case of C. & N. W. Ry. Co. v. Moranda, 93 Ill. 302.    We have again carefully examined that case as well as all the cases so ably reviewed by it, and will content ourselves with the announcement of our conclusions without any extended discussion of the question.    If there is, as is claimed, a want of harmony in the numerous cases upon this subject, it should be corrected in the court of last resort, not here.    It is not our province or pleasure to indulge in any dis-cussions or criticisms upon that subject.    Our only duty is to extract the true rule from the numerous decisions and apply it to the case in hand.

After a full and careful examination of the facts developed by the evidence in the case, and of all the authorities referred to, applying what is said by the learned judge in the Moranda case to the facts of the case under consideration, and in view of the full indorsement in that case of the doctrine of the case of C. & A. R. R. Co. v. Murphy, 53 Ill. 336, we are very clearly of opinion that the deceased and the persons who caused the injury resulting in his death were fellow servants of a com-mon master, engaged in the same line of employment.

The question of who are fellow servants, as well as that of negligence, is held by the Supreme Court to be a question of fact to be determined by the jury from the evidence.    I. & St. L. R. R. Co. v. Morgenstern, 106 Ill. 216.

And in this view the verdict of the jury ought not to be

disturbed by this court unless it is so manifestly unsupported by the evidence as to show that injustice has been done; but in a case where the main facts are uncontroverted and we are fully convinced that in no view of the case made can the plaintiff rightfully recover, and so long as it is made our duty by law to review the facts, and more especially since that right has been taken from the Supreme Court, we must not hesitate to do our duty and reverse the judgment, notwithstanding the fact that the jury saw the witnesses on the stand and had better means of giving proper weight to their evidence than we have.

On the trial of the cause the court, on behalf of the plaintiffs below, gave to the jury the following instruction:

"You are instructed that even though two servants may be employed by the same master, yet if they are not by their usual duties brought into habitual association, and are not at the particular time in question co-operating with each other in any particular business or work, they are not fellow servants in the same line of employment."

The terms "brought into habitual association" and "co-operating with each other in any particular business or work" are so general and vague that they would convey to the mind of a juror unlearned in the law a very indefinite idea of the law of fellow servants, and as applied to the facts of the case before the jury, could hardly have failed to mislead them.

To co-operate in a particular work would most likely be understood as requiring the parties to be engaged in doing exactly the same work at the same time and place and under the same foreman. In all such work there must necessarily be division of labor among servants; one does one thing and another a different thing. In performing different parts of the work it is not uncommon for the servants to work under different overseers or foremen, but all are alike the servants of a common master; and when engaged in the same line of employment, if there is a rational and necessary connection between the different parts thereof, such as necessarily brings the servants into frequent contact with each other in the prosecution of their work, they are co-servants. We do not

understand this view of the law to be in conflict with the doctrine of the Moranda case. On the contrary it is fully supported by the Murphy case there quoted and approved as unquestionable law. Again, long after the decision of this case the Supreme Court, in an opinion filed in the Morgenstern case, *supra*, held that a car inspector who was injured while in the discharge of his duties, and a baggageman who caused the injury while wheeling baggage, both working in the same yard, were fellow servants, notwithstanding their duties were essentially different and one was employed by and reported to the master mechanic and the other was employed by and reported to the superintendent. And the Moranda case was referred to as authority for so holding. Subsequently a rehearing was granted and the case finally decided on other grounds, but the opinion in this respect was not changed or modified, and may therefore be considered as correctly expressing the opinion of the court upon this question.

For the reasons here given, the judgment is reversed and the cause remanded.

Reversed and remanded.