EDWARD J. OKER, Respondent, v. HILL-O'MEARA CONSTRUCTION CO., Appellant.

St. Louis Court of Appeals, June 6, 1911.

1. **MASTER AND SERVANT:** Injury to Servant: Fellow Servant: Departmental Doctrine. As limited by the departmental doctrine, those are fellow servants who are in the employ of a common master, engaged in a common undertaking and so associated and related in the performance of the work that they can observe and influence each other's work and report any delinquency to a correcting power; but servants employed by a common master in a common undertaking who are not so associated and connected in their work as to be able to observe and suggest delinquencies as in consocation, but instead serve the common master in separate departments of the work, en-

tirely disconnected with each other, are not subject to the fellow service rule exculpating the master for injuries received by one servant through the negligence of another.

2. ——: ——: ——: ——: **Not Applicable, When.** In determining whether the fellow service rule obtains, the departmental doctrine is applicable in cases where a servant, employed by manufacturing or other concerns of large proportions or engaged in the construction of large buildings, is injured, if all of the elements essential to its invocation are present, but it does not obtain in a case where the injured servant is engaged in the construction of a small building, when it appears all of the servants, though prosecuting separate avocations under different foremen, are employed to the same common end of constructing the building, and move about in performing their duties under the very eye of each other; so that, where a hodcarrier, assisting bricklayers in constructing a small building, 40x60 feet in dimensions, was injured by the negligence of a carpenter in removing a support from beneath a board upon which the former walked, and the hodcarrier and carpenter, though working under separate foremen, performed their respective tasks in full view of each other, the element of consociation was present and the departmental doctrine did not obtain, and hence the hodcarrier and carpenter were fellow servants of each other, precluding a recovery against the master, on the part of the former, for such injuries. *Held*, by REYNOLDS, P. J., concurring, that the size of the building or magnitude of the work are not the controlling features in determining the question of fellow service, in the application of the departmental rule.

3. ——: ——: **Liability of Master: Constructive Notice.** Where a hodcarrier was injured by reason of a fellow servant's removal of supports from a runway about ten minutes before the accident, and no one representing the master had actual knowledge of the defect, there was nothing upon which to base an inference that the defect had existed a sufficient length of time to have enabled its discovery by the master, by the exercise of ordinary care on his part, and hence the master was not liable.

Appeal from St. Louis City Circuit Court.—*Hon. W. B. Homer,* Judge.

REVERSED.

*Collins & Chappell* for appellant.

(1) There was no evidence to sustain the verdict, and defendant's peremptory instructions, one asked at the close of plaintiff's evidence in chief and the

other at the close of all the testimony, should have been given.  Porter v. Railroad, 71 Mo. 66; Seila v. Railroad, 82 Mo. 430; Gutridge v. Railroad, 94 Mo. 468; Mensch v. Railway, 150 Pa. St. 598; Richardson v. Cooper, 88 Ill. 270; Solomon R. Co. v. Jones, 30 Ark. 601; Railroad v. Threat, 34 S. W. 152; Bailey on Personal Injuries, sec. 454a.

*Williams & Rollins* for respondent.

(1)  The plaintiff was a hodcarrier and was working directly under the foreman of the department, and in his presence, and had a right to presume that the run over which he was directed to go was in a safe condition.  Doyle v. M. K. & T. Trust Co., 140 Mo. 1.  (2) It is the duty of the master to furnish their employees with a reasonably safe appliance, machinery and run. Mathis v. Stockyard Co., 185 Mo. 434; Curtis v. Mc-Nair, 173 Mo. 280; Porter v. Railroad, 71 Mo. 66.  (3) The propostion of a fellow-servant, as stated in appellant's brief, does not apply to this case, for the reason:  In the first place, that the respondent's foreman was present when the run was placed in an unsafe condition, and for the further reason that a carpenter or a carpenter's helper, who are employed and working under another department and foreman and whose act made said run unsafe, and for the further reason, that if the party that tore up said run and took away said block, did so in the presence of the foreman, Mr. Batz, and if he saw said run being torn up, or by the exercise of ordinary care and prudence could have seen the carpenter or his helper tear up said run and did not notify the plaintiff of its unsafe condition, then the defendant is liable, and the court properly instructed the jury on this matter, and it was a question of fact to be submitted to the jury .  Covey v. Railroad, 86 Mo. 635.  (4)  A foreman in charge of laborers is a vice-principal of the master, and not a fellow servant.  Sullivan v. Railroad, 107 Mo. 66.

(5)   Where a master engaged in business employs a
large number of men to carry on separate or different
work, and each department has its foreman, the em-
ployee of one department is not a fellow-servant of
the other employees in a different department.   Dixon
v. Railroad, 109 Mo. 423.


NORTONI, J.—This is a suit for damages ac-
crued to plaintiff an account of personal injuries re-
ceived through the alleged negligence of defendant.
Plaintiff recovered and defendant prosecutes the ap-
peal.

At the time of his injury, plaintiff was a hodcar-
rier in the employ of defendant corporation, a contrac-
tor and builder.   Defendant was engaged in construct-
ing a brick building about forty by sixty feet in dimen-
sions in the city of St. Louis, and plaintiff was attend-
ing the bricklayers thereon by carrying brick in a hod
when he was precipitated between the joists of the
building, to his injury, because of the tipping of a
runway constructed for the use of the hodcarriers.
The building had progressed to the height of one story
and the joists were laid thereon.   Upon the top of
the joists a walk had been constructed for the hodcar-
riers, by means of boards  nailed thereto, but one por-
tion of the structure was about fourteen inches higher
than the other; that is to say, it appears the first
story of a portion of the building was about fourteen
inches higher than the same story of the other portion.
Because of this fact, a runway was constructed for
the hodcarriers from the walk on the lower portion of
the building to the walk constructed for them on the
higher portion.   This runway was constructed of a
two-inch yellow pine plank about twelve inches in
width and fourteen feet in length.   The plank was
securely nailed at either end by those who constructed
the scaffold, six and a half hours before plaintiff's
injury, and under the center it was braced by means of

a block four inches thick and from six to ten inches wide, to which the plank was nailed as well. It appears this plank, spoken of in the evidence as the runway, was nailed to the walk on the joists of the building with twenty-penny nails at each end and likewise nailed to the block under the center thereof, and, as thus constructed, it was in every respect sound and secure for. the use intended. Over this, plaintiff and others passed to and fro during the day, with hods filled with brick or mortar on their shoulders, and all agree that the runway was perfectly secure until ten minutes before plaintiff's injury. Besides the hodcarriers and bricklayers, a number of carpenters in defendant's employ were likewise working on the second story of the building; the two gangs working about and in near proximity to each other. The bricklayers and hodcarriers were working under defendant's foreman, Batz, while the carpenters and their helpers were working under defendant's foreman of the carpenters, Nelson; but, as stated, all were prosecuting the duties of their employment on the second story of the building and in near proximity to each other. The two gangs, under their respective foremen, were disassociated in performing the functions of their respective trades, though all were engaged in the common employment of constructing the building. The carpenters were wholly unconcerned, however, with the bricklayers' walk and runway, for these were constructed by hodcarriers under the immediate supervision of their foreman, Batz. There is no complaint in the case that the runway upon which plaintiff received his injuries was not properly constructed, but the averment is, that it was rendered unsafe immediately before plaintiff's injury by the act of one of defendant's carpenters in removing the block from under the center thereof. Plaintiff says he passed over the runway numerous times during the day and to his knowledge it was entirely secure until about fifteen

minutes before his injury. No more than fifteen minutes before he was injured, he passed over it and down the ladder to the earth beneath for the purpose of filling his hod with brick. While on the ground he procured a drink of water, attended to an errand, and filled his hod, in all consuming about fifteen minutes, when he returned with his hod laden with brick. Upon passing over the runway with the hod on his shoulder, though the plank seemed to be resting identically as before, it suddenly turned, when he was about the middle, and precipitated him to his injury. It appears that after plaintiff had passed below to fill his hod, either a carpenter or a carpenter's helper engaged at work but a few feet away tore up the runway, for the purpose of appropriating the block thereunder to the use of the carpenters. This carpenter, or carpenter's helper, as the case may be, removed the runway from its secure position by means of a hammer and pinch bar, took out the block which was nailed beneath the center, and turned the plank constituting the runaway over, as before, without nailing it fast or placing another support thereunder.

Plaintiff introduced defendant's foreman, Batz, who testified for him to the effect that though the two gangs of men were working on the same story of the building for the common master, to the same end of constructing the building and in close proximity to each other, they were each under a separate foreman and the one prosecuted the work of bricklayers and their helpers while the other that of the carpenters and their helpers and that the carpenters had nothing whatever to do with the matter of the scaffolding and runways for the bricklayers. For plaintiff this witness also testified that he had caused the scaffold and runway to be erected by his men about six and one-half hours before plaintiff's injury and that it was entirely secure to within ten minutes before plaintiff's injury. The witness, defendant's foreman, passed

over the runway but ten minutes before plaintiff was injured and observed it to be in perfect condition as originally constructed and he did not see nor had he been advised of its disarrangement by the carpenter or the carpenter's helper until after plaintiff was injured.

The court referred the matter of defendant's liability to the jury as if plaintiff and the carpenter who negligently tore up the runway were not fellow-servants, for it instructed that if the jury found the runway was rendered dangerous and the injury occasioned by the negligent act of one of defendant's carpenters or a carpenter's helper, plaintiff was entitled to recover. Obviously, the court treated plaintiff and the carpenters as being engaged in different departments of the master's service so as to render the master liable for the negligent act of the carpenter or carpenter's helper in wrongfully tearing up the runway and removing the block from under it without warning plaintiff. This was an erroneous view, for, beyond question, these men were fellow-servants even though the departmental limitation on the rule obtains in Missouri. It is true the fellow-service rule, according to the full measure of its scope declared in Farwell v. R. R. Corp., 4 Metc. (Mass.) 49, does not obtain here and that it is subject to the doctrine known as the departmental limitation requiring servants in order to be declared fellows to be such in fact and not simply in dialectic theory. Though the departmental doctrine was severely criticised in Grattis v. K. C., etc., R. Co., 153 Mo. 380, 55 S. W. 108, it is nevertheless frequently applied by our Supreme Court in proper circumstances, to the end of attaining a just result, as will appear by reference to the following recent cases in point: Koerner v. St. Louis Car Co., 209 Mo. 141, 107 S. W. 481; Lanning v. Chicago, etc., R. Co., 196 Mo. 647, 94 S. W. 491. As limited by the departmental doctrine, with us, those are fellow-ser-

vants who are in the employ of a common master to the end of a common undertaking and are so associated and related in the performance of the work that they can observe and influence each other's work and report any delinquency to a correcting power. [See Judge Black's opinion in Parker v. Hannibal & St. Jo. R. Co., 109 Mo. 362, 409, 19 S. W. 1119; Relyea v. K. C., etc., R. Co., 112 Mo. 86, 93, 20 S. W. 480; Koerner v. St. Louis Car Co., 209 Mo. 141, 107 S. W. 481.] For a highly instructive discussion of the whole subject, see also Chicago, etc., R. Co. v. Moranda, 93 Ill. 302. When servants employed by a common master in a common undertaking are not so associated and connected in their work as to be able to observe and suggest delinquencies as in consociation but instead serve the common master in separate departments of the work, entirely disconnected with each other, then the fellow-service rule, exculpating the master for injuries received by one servant through the negligence of another, is repulsed under the more just and humane departmental limitation thereon. If, therefore, it appears a servant is injured without fault through the negligence of another servant in the employ of the same master engaged in a different department of the work, the master will be liable under the rule *respondeat superior* identically as in case a third person were injured, for at common law the master must respond for the negligent torts of his servant committed while performing duties within the scope of the employment. To the rule *respondeat superior,* the only exception is that of fellow service and this exception does not obtain in this jurisdiction when there is absent consociation and the injured servant received his hurt through the negligence of one engaged in a distinct department entirely disconnected from that of the injured servant. [Relyea v. K. C., etc., R. Co., 112 Mo. 86, 93, 20 S. W. 480; Koerner v. St. Louis Car Co., 209 Mo. 141, 107 S. W. 481; Parker

v. Hannibal & St. Jo. R. Co., 109 Mo. 362, 409, 19 S.
W. 1119; Dixon v. C. & A. R. Co., 109 Mo. 413, 19 S.
W. 412; Chicago, etc., R. Co. v. Moranda, 93 Ill. 302.]

It is argued that as the carpenters and hodcar-
riers were under separate foremen, the one prosecut-
ing the calling of carpenters and the other that per-
taining to bricklaying, they should be treated as in
different departments of the common master's employ-
ment so as to render defendant liable for the negli-
gent act of the carpenter in tearing up the runway,
but the argument is unsound for several reasons.
Though the departmental doctrine is usually applied
in railroad cases because they more frequently than
any other present the complications of extensive busi-
ness which essentially divides itself into different de-
partments employing men entirely disconnected with
each other in the performance of duties pertaining
to the common undertaking, there can be no doubt
that it obtains as well with respect to manufacturing
and other concerns of large proportions. We believe,
too, that it would find appropriate application between
the master and servant engaged in the construction of
large buildings if all of the elements essential to in-
voke it were present. [See Koerner v. St. Louis Car
Co., 209 Mo. 141, 107 S. W. 481; Lloyd on Building
(2 Ed.), sec. 84.] But it is obvious that it does not
obtain between the master and servant engaged in the
construction of a small building such as this one, forty
by sixty feet in dimensions, when it appears all of the
men, though prosecuting separate avocations under
different foremen, are employed to the same common
end of constructing the building, and move about in
performing their duties under the very eye of each
other. In such circumstances, where the bricklayers
and carpenters working under separate foremen are
constantly moving to and fro, as they must on a small
building, in performing the separate tasks of each in
the full view of the other, the element of consociation

is present, for each may observe and suggest the delinquencies of the other to his associates or to the master and in a measure protect himself against the shortcomings of all. While the matter of different foremen is frequently mentioned in the authorities affirming the departmental doctrine, it is observed to be in those cases where consociation is absent and the departments of the work are so distinct as to render the employees of each quite distant in the relation of one to the other. Such is the thoughtfully and well considered case of Dixon v. C. & A. R. Co., 109 Mo. 413, 19 S. W. 412. Be this as it may, no one can read the authorities and reflect on the subject without appreciating that the mere fact of separate foremen is entirely immaterial and insufficient to invoke the departmental limitation on the fellow service rule if it appears the different parties of men are so associated in the common undertaking and in such frequent contact with each other as to enable those under one foreman to observe and suggest the derelictions of those under another. Indeed, such has been expressly decided in the state whose courts were among the earliest, if not the first, to modify the fellow service rule by the appropriate and just application of the doctrine referred to. [See C. & A. R. Co. v. O'Bryan, 15 Ill. App. 134.] In this view, too, our own Supreme Court said the fact that each servant was under the immediate command of his own conductor does not constitute a decisive or controlling circumstance invoking the departmental doctrine if it appears the element of consociation is actually present as in this case. [Relyea v. R. Co., 112 Mo. 86, 93, 94, 20 S. W. 480.] To the same effect see also Quebec S. S. Co. v. Merchant, 133 U. S. 375, and Bier v. Jeffersonville, etc., R. Co., 132 Ind. 78, where it appears the work under separate foremen was divided into different departments for convenience but nevertheless the element of consociation obtained because of

the near proximity of the work being performed by the separate gangs. It is true the Supreme Court of the United States and that of Indiana in the cases cited both ignore the departmental limitation as it prevails with us but nevertheless the Indiana court says even in those jurisdictions where the departmental doctrine obtains the element of consociation being present that doctrine would not obtain in such a case where two separate foremen appear. It is entirely clear that plaintiff and the carpenter who so negligently occasioned his injury were fellow servants and that notwithstanding the fact that the two parties of men were prosecuting their distinct avocations under separate foremen, the departmental doctrine does not obtain.

It conclusively appears the runway was properly constructed in the first instance and continued to be reasonably safe until the negligent act of the carpenter intervened to destroy its security but ten minutes before. From what has been said, it is obvious in such circumstances no liability for an injury resulting therefrom was entailed upon the master unless it knew, or by the exercise of ordinary care might have known, of the defect so as to have warned plaintiff of the danger or repaired the runway. If defendant or its foreman was without actual knowledge of the act of the carpenter which rendered the runway unsafe, then, of course, liability for plaintiff's hurt accrued only as a result of the breach of the obligation to exercise ordinary care in the matter of inspection and after a reasonable time for repair had elapsed. [Bailey v. Stix, Baer & Fuller D. G. Co., 149 Mo. App. 656, 129 S. W. 739; 1 Bailey's Personal Injury, p. 155.] Plaintiff proved as part of his case that the runway was perfectly sound and secure fifteen minutes before, to his certain knowledge. Beyond this, he proved, too, that the foreman, Batz, had passed over it only ten minutes before when it existed precisely as originally con-

structed and that Batz was wholly without knowledge of the carpenter's act until after the injury occurred. His case, therefore, reveals conclusively that the defect existed not to exceed ten minutes and that no one representing the master had actual knowledge thereof during the interim, for nothing appears to suggest that any other foreman or the superintendent knew the runway had been disturbed. In this state of the case, it is obvious there is naught from which the jury could infer the defect had existed a sufficient length of time to have been discovered by the exercise of ordinary care on the part of the foreman, though he were even unusually attentive about the matter of inspection, and a reasonable length of time had elapsed in order to enable repair.

The judgment should be reversed. It is so ordered. *Caulfield, J.,* concurs. *Reynolds, P. J.,* concurs in result in separate opinion.

NORTONI, J.—Since the filing of the opinion of the court in this case, the Presiding Judge has prepared a separate concurring opinion which suggests that we hold the mere size of the building is controlling on the question of invoking or repelling the departmental limitation on the fellow-service rule. Upon re-reading the opinion as originally written, we have been wholly unable to discover anything said therein which even implies that the size or magnitude of the undertaking alone and without more is of controlling importance and all of us understand the contrary to be true. *Caulfield, J.,* concurs.

## CONCURRING OPINION.

REYNOLDS, P. J.—I agree to the result, but to avoid any misapprehension I desire to emphasize the proposition that in my judgment, the size of the build-

ing or magnitude of the work in which the men are engaged are not the controlling features in determining the question of fellow-service, in the application of the departmental rule.

While Judge GANTT, speaking for the Supreme Court in Koerner v. St. Louis Car Co., 209 Mo. 141, l. c. 156, 107 S. W. 481, says that he sees no reason why the rule applied to railroads should not be extended to large manufacturing businesses, to a manufacturing business having a large plant and with various distinct departments, I do not understand that he intends to confine the matter of departmental division of work to large enterprises. The departmental division may be as sharp in a small one as in a large one; a large one need not and may not be conducted on the departmental basis. The small one, it is true, brings the men working on or in it nearer together, so that one workman can more readily see what another is doing—as for example the carpenter putting up the door and window-casings is more apt to see what the electrician putting in the wiring is doing in a small house than in a large one. The size of the house, however, is not the controlling factor; that may or may not enter into the case in determining it. Thus in the Koerner case, Judge GANTT quoted approvingly from Judge BLACK in Parker v. Railroad, 109 Mo. 362, l. c. 409, 19 S. W. 1119: "The real and only point of distinction, it seems to us, arises out of the fact that the servants are so associated and related in the performance of their work that they can observe and influence each other's conduct, and report any delinquency to a correcting power." This may happen even in a large plant; it may not happen in a small one. The solution of the matter, the crucial fact, is the manner in which the work is actually carried on. In the majority of the Missouri cases referred to in the body of the opinion, our Supreme Court has pointed out the impossibility

as well as the danger of laying down any fixed rule on the matter. In applying the principle, each case has always been and always must be determined on its own facts. So here, considering the size of the plant where the work is done and the manner in which it was done, inasmuch as it appears that "all of the men, though prosecuting separate avocations under diffrent foremen (were), employed to the same common end of constructing the building and (moved) about in performing their duties under the very eye of each other," they were fellow-servants.