CHARLES SCHEIDLER, Respondent, v. MISSOURI BOILER & SHEET-IRON WORKS, Appellant.

St. Louis Court of Appeals, April 8, 1913.

1. **MASTER AND SERVANT: Injury to Servant: Fellow-servant.** A servant assumes the risk of injury resulting from the negligent acts of his fellow-servants.

2. ———: ———: ———: Negligence of Master or Fellow-servant. Where plaintiff, a servant engaged in doing iron work on a tower, sent his helper to the master's factory to get a hook from which to suspend his seat, and the helper, finding no hooks in the customary place, had the master's blacksmith construct one, and, it being hot, the blacksmith authorized the helper to place it in cold water, as a result of which it became so highly tempered that it broke while plaintiff was suspended from it, the negligence in thus highly tempering the hook was that of the blacksmith and not that of the helper.

3. ———: ———: ———: Nondelegable Duty. A master cannot escape liability for injury to a servant on the ground that the injury was caused by the negligence of a fellow-servant, where the fellow-servant was performing a nondelegable duty of the master.

4. ———: ———: ———: ———. The duty of the master·
to furnish his servant with reasonably safe appliances for the
performance of the work is nondelegable.

5. ———: ———: Scope of Servant's Authority: Nondelegable
Duty. In an action by a servant who was injured by the break-
ing of a hook from which he was hanging while doing work on a
tower, held that the blacksmith employed by the master, who·
made the hook in question, was acting within the scope of his·
authority in making it, and was performing a nondelegable
duty of the master.

6. ———: Fellow-servants: Departmental Rule. The servants
of a common master who are not so associated and connected in
their work as to be able to observe and suggest delinquencies
as in consociation, but instead serve in separate departments·
entirely disconnected with each other, are not fellow-servants;
and hence a servant of a corporation engaged in the manu-
facture and installation of sheet iron and galvanized iron work,
who labored on the outside in installing iron work in buildings,
was not a fellow-servant of a blacksmith, who was employed in
the factory in making the materials.

Appeal from St. Louis City Circuit Court.—*Hon. W.*
*B. Homer,* Judge.

AFFIRMED.

*Watts, Gentry & Lee* for appellant.

(1) The demurrer to the evidence should have·
been sustained because the evidence wholly fails to·
show any negligence whatever on the part of the de-
fendant. If plaintiff was injured by the negligence of
anyone at all, it was through the negligence of Kieran,
who was clearly shown to be a fellow-servant with the·
plaintiff, or the negligence of the blacksmith who is·
not shown to have been authorized by the defendant·
to do any act as the master's vice principal in the
matter of furnishining or manufacturing appliances
or giving orders to Kieran. He also, so far as the·
evidence shows, was a mere fellow-servant of the
plaintiff. Shaw v. Bambrick-Bates Cons. Co., 102 Mo.
App. 666; McCaffrey v. Glue Co., 143 Mo. App. 24;·

Henson v. Stave Co., 151 Mo. App. 234; Brandt v. Breweries Co., 141 S. W. 444; Ryan v. McCulley, 123 Mo. 645; LaBatt on Master & Servant, sec. 496; Johnson v. Street Railway, 104 Mo. App. 589; Padgett v. Scullin-Gallagher I. & S. Co., 140 S. W. 943. (2) The burden was upon plaintiff to show that the one whose act caused his injury was not his fellow-servant. Shaw v. Bambrick-Bates Cons. Co., 102 Mo. App. 666; McGowan v. Railroad, 61 Mo. 528; Sheehan v. Prosser, 55 Mo. App. 574; Blessing v. Railroad, 77 Mo. 413.

*Wm. Sacks* and *Edwin Rosenthal* for respondent.

(1) The demurrer to plaintiff's evidence was properly overruled. Enloe v. Car & Foundry Co., 240 Mo. 448; Echhard v. Transit Co., 190 Mo. 611; Ellis v. Street Railway, 234 Mo. 673-4; Waddell v. Railroad, 213 Mo. 16; Klockenbrink v. Railroad, 81 Mo. App. 351; 172 Mo. 678. (2) The injury was not caused by a fellow-servant of plaintiff's. Bailey v. Stix, Baer & Fuller, 149 Mo. App. 656; Oker v. Construction Co., 158 Mo. App. 213; Sampson v. Railroad, 156 Mo. App. 419; Brandt v. Kansas City Brew. Co., 159 Mo. App. 572; McMurray v. Railroad, 225 Mo. 272; Kelly v. Railroad, 141 Mo. App. 490; Landcaster v. Railroad, 143 Mo. App. 163; Koerner v. Car Co., 209 Mo. 141; Van Verth v. Cracker Co., 155 Mo. App. 304; Combs v. Roundtree Constr., Co., 205 Mo. 367; Lewis v. Railroad, 59 Mo. 295. (3) That even though the blacksmith directed Kieran to put hook in heated condition in water, causing it to become brittle and break under the weight of one man, where ordinarily such a hook would bear the weight of four or five men, or from 1500 to 2000 pounds, that this act would be chargeable as an act of defendant corporation, and was an act done by the blacksmith in the course of his employment, even though the negligent act was not necessary to the performance of his duties nor expressly author-

ized by or knownn to defendant corporation. Winfrey v. Lazarus, 148 Mo. App. 388; Denny v. Bridge & Iron Co., 150 Mo. App. 76; James v. Muehlebach, 34 Mo. App. 512.

NORTONI, J.—This is a suit for damages accrued to plaintiff on account of personal injuries received through the alleged negligence of defendant. Plaintiff recovered and defendant prosecutes the appeal.

Defendant is an incorporated company engaged both in the manufacture of sheet iron and galvanized iron work and installing the product of its factory on and in buildings, and plaintiff was in its employ as a workman at the time of his injury. Defendant maintained its factory in St. Louis, and it is to be inferred that it took contracts for the installation of its product on and in the buildings of its customers. At the time of his injury, plaintiff was engaged doing certain galvanized iron work on the outside and near the top of a tower which extended some thirty feet above the roof of a building owned by the Union Brewing Company. In the performance of his duty, it was necessary for plaintiff to sit in a seat suspended by a rope from the top of the tower. This rope suspending the seat in which plaintiff sat was tied to a metal hook shaped like the letter "S" and made fast through that appliance being hooked over the top of the tower. While thus suspended and at work, the metal hook broke in two and precipitated plaintiff to the roof of the building below, inflicting severe and permanent injuries upon him. It appears the hook broke because it was too highly tempered and therefore made brittle.

The evidence tends to prove that defendant manufactured such hooks for the use of its workmen and kept them hanging in a portion of the factory where they might be selected as needed. Upon undertaking the task assigned him at the tower, plaintiff found that he was without a suitable hook among his supplies and

therefore instructed his helper, Kieran, to go to the factory to get him a hook suitable for the work. Kieran, plaintiff's helper, was deaf and dumb, and plaintiff communicated the instruction to him in writing. Kieran searched for a suitable hook at the factory where such appliances were usually kept and found none there. Thereupon he went to defendant's blacksmith in the factory and through signs said to him, "Will you please make a hook for me?" The blacksmith answered, "All right." Kieran then attended to another errand and returned to the blacksmith, where he found the hook completed and lying upon the ground. Kieran says, in the sign language, testifying through an interpreter, "When I touched that hook, I found it was hot and burned my finger. Then I asked the blacksmith, 'Can I put it in that tub of water?' and the blacksmith said 'Yes,' so then I put it in the water and then afterwards I took it out and brought it with the casing to plaintiff and he looked at it and said 'All right.'" Plaintiff, having thus gotten a hook suitable to his work, attached the rope and swinging chair to it and fastened the hook to the top of the tower. The hook afterwards broke in two, as before stated, and precipitated him to his injury. An expert blacksmith who examined the break testified that it was occasioned because the steel of which it was made was too highly tempered through being placed in the tub of water while hot. There is nothing in the case to suggest that the defect was obvious to plaintiff or that it might have been discovered by ordinary care on his part, and it seems to be conceded that the hook broke because of its being placed in the water while it was yet hot.

It is argued on the part of defendant plaintiff is not entitled to recover for the reason that it does not appear it furnished him the hook but that rather he came to his injury through the omission of ordinary care on the part of Kieran or defendant's blacksmith,

who, it is said, were both his fellow-servants, and for whose negligence defendant may not be required to respond, for the reason plaintiff assumed the risk incident to the omission of care on their part upon entering the employment. There can be no doubt that plaintiff assumed the risk of injury resulting from the negligent acts of his fellow-servants as ordinarily incident to the calling he pursued in defendant's employ. But we are not willing to concede that the case reveals defendant's blacksmith who manufactured the hook is a fellow-servant with plaintiff in the sense of the law. However, it is obvious that Kiernan, the deaf and dumb man, who was plaintiff's helper, was his fellow-servant and defendant should not be required to respond for his negligent act. Though such be true, the act of placing the hook while hot in the water and thus rendering it liable to break when in use should not be attributed to Kieran alone but rather to defendant's blacksmith who manufactured the hook and authorized its immersion. It is to be inferred that defendant's blacksmith knew that the sudden placing of the steel hook when hot into the water would render it liable to break while being used to suspend plaintiff in the air in the performance of a dangerous task. This being true, he should have permitted it to cool gradually, in which event it would have been entirely safe, as the evidence shows. After the blacksmith produced the hook with hammer and forge, he laid it upon the ground. Kieran touched it and it burned his finger. Kieran then asked permission of the blacksmith to submerge it in water, and he thereupon authorized the careless act, which it appears entailed plaintiff's injury. The act of defendant's blacksmith in authorizing Kieran to immerse the hook in the water was equivalent to a direction on his part to do so and the case must therefore be viewed and treated as though plaintiff came to his injury through the negligent act of the blacksmith and not of his fel-

low-servant, Kieran. In this view, defendant may be required to respond if it appears the blacksmith was acting within the scope of his employment in making the hook. [See James v. Muehlebach, 34 Mo. App. 512.]

But it is said plaintiff and the blacksmith were fellow-servants for the reason they were engaged in the common employment of a common master and for the further reason it does not sufficiently appear that the blacksmith was acting within the line of his duty for defendant in manufacturing the hook to be used by plaintiff. Whatever may be said touching the liability of a master, it is certain that the fellow-service exception thereto does not obtain where the breach pertains to a nondelegable duty of the master, for in such cases he may not escape responsibility through authorizing another to perform his obligation. Among the nondelegable duties of the master is that to exercise ordinary care to the end of furnishing the servant with a reasonably safe appliance for the performance of the undertaking in which he is engaged. [English v. Roberts, Johnson & Rand Shoe Co., 145 Mo. App. 439, 122 S. W. 747.]

These propositions seem to be conceded, but it is said the evidence does not sufficiently reveal that defendant authorized the blacksmith to manufacture and furnish the hook to plaintiff. It is true the evidence is meager touching this matter, but we believe it was sufficient as a prima facie showing for the jury when all reasonable inferences therefrom are reckoned with. The record shows conclusively and without dispute that defendant manufactured and furnished these "S" hooks to its workmen and usually had a supply on hand hanging at a certain place in the factory. It is admitted the blacksmith who made this hook was defendant's blacksmith and in its employ in the factory. Defendant is a corporation and can manufacture and furnish such hooks only through agents and

servants in its employ. Everyone knows that such a hook is the product of forge, anvil and hammer under the hand of a blacksmith. When plaintiff's helper applied to the blacksmith for a hook, the blacksmith merely replied, "All right," and manufactured the hook in defendant's factory at its forge and on its anvil, as if such was the usual course. When all of these facts are considered together, it is clear that the jury were authorized to find therefrom that defendant furnished the hook through the medium of its blacksmith who manufactured it, for it appears that all such hooks were manufactured in its factory and they could only be manufactured by the blacksmith therein. This we believe was a sufficient prima facie showing that the blacksmith was acting for defendant within the scope of his employment and that defendant therefore furnished plaintiff a defective appliance. The burden was thereby shifted to defendant,. and it introduced no evidence whatever.

But it is said that, in the absence of more direct proof tending to show defendant's blacksmith was especially charged by it with the manufacture of such hooks, he should be regarded as the fellow-servant of plaintiff, for such is the presumption, as they are both in the employ of the same defendant in a common undertaking. Obviously these men were not fellow-servants, and instead of the prima facie showing suggesting that relation, it dispels it entirely. As a rule, the master is responsible for injuries entailed through the negligent tort of his servant pursuing his line of duty, and the only exception to this is that which arises from the fellow-service doctrine. In this jurisdiction, where the departmental limitation upon the fellow-service rule obtains, those are not fellow-servants who are engaged in separate and distinct departments of the master's employment and so engaged about their work as to be foreign to each other. When the servants of a common master engaged in his work are not so asso-

ciated and connected in their work as to be able to observe and suggest delinquencies as in consociation, but instead serve the common master in separate departments entirely disconnected with each other, then the fellow-servant rule; exculpating the master for injuries received by one servant through the negligence of another, is repulsed under the more just and humane departmental limitation thereon. [See Oker v. Hill-O'Meara Construction Co., 158 Mo. App. 213, 138 S. W. 84; Koerner v. St. Louis Car Co., 209 Mo. 141, 107 S. W. 481.] Here it appears plaintiff was an outside man engaged in installing on buildings sheet iron and galvanized iron work manufactured in defendant's factory and the blacksmith was engaged alone in the factory where the metal product and implements of the trade were created. Obviously there was no consociation between these men and neither was under the eye of the other so as to report delinquencies to the common master. To declare these men to be prima facie fellow-servants would infringe the spirit and the sense of the rule and constitute a departure from the established law on the subject.

The judgment should be affirmed. It is so ordered. *Reynolds, P. J.,* and *Allen, J.,* concur.